UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PATRICK K. KINGORI,
    Plaintiff,

v.

CITIZENS FINANCIAL GROUP, INC,
Alias, and any and all Defendants.
    Defendants.

C.A. No. 18-340-JJM-LDA

ORDER

Patrick K. Kingori brings racial discrimination claims based on disparate treatment and discriminatory discharge[1] against his former employer, Citizens Financial Group.[2] Citizens moved for summary judgment. ECF No. 39. Finding there are no genuine issues of material fact, and that Citizens is entitled to judgment as a matter of law, the Court GRANTS Citizens' Motion for Summary Judgment for the reasons given below.

I.    FACTS

Mr. Kingori, an African American man from Kenya, started working at Citizens in February 2013 as a Vice President Senior Manager of the Basel Program[3]

---

[1] Count I alleges a violation of 42 U.S.C. § 1981 (Disparate Treatment) and Count V alleges a violation of 42 U.S.C. § 1981 (Discriminatory Discharge). The Court dismissed Mr. Kingori's Title VII counts (Counts II, III, IV, VI, VII, and VIII) because the statute of limitations had run.

[2] Citizens claims Mr. Kingori erroneously sued it as Citizens Financial Group, when in fact the correct entity is Citizens Bank, N.A. ("Citizens").

[3] "Basel is a set of international banking regulations put forth by the Basel Committee on Bank Supervision, which set out the minimum capital requirements of financial institutions with the goal of minimizing credit risk. Banks that operate

Planning and Analyst. Arun Musinipally hired Mr. Kingori and was his manager during his sixteen-month tenure at Citizens.[4] Mr. Kingori's and Citizen's factual accounts of Mr. Kingori's tenure at Citizens tell two different stories. While these stories are different in the telling, the differences are not material to the legal claims Mr. Kingori brings.

### *Citizens' Account*

According to Citizens' evidence, Mr. Kingori's work performance was sub-par. His review and analysis of complicated banking regulations was shallow. About six months after Citizens hired him, it dissolved the Basel qualification program and Citizens reassigned Mr. Kingori and Mr. Musinipally to a team in Boston. Mr. Kingori was unhappy about the new assignment because of the long commute. Mr. Kingori began to "pester" Mr. Musinipally about receiving a promotion to senior vice president. Because Mr. Kingori had not been there long, Citizens did not offer him a senior vice president position, though it did offer him another position, which could have put him in a better position to be promoted to senior vice president, but he turned it down.

---

internationally are required to maintain a minimum amount (8%) of capital based on a percent of risk-weighted assets."
https://www.investopedia.com/terms/b/basel_i.asp (last visited September 10, 2020).

[4] Citizens also claims that it learned that Mr. Kingori's resume contained false information. For example, Citizens alleges that Mr. Kingori falsely suggested that he had received a degree from Columbia Business School and that he had modeling and other skills that Citizens later discovered were beyond his competency. He did not reveal when he applied to Citizens that he had resigned his position with Citigroup. Mr. Kingori neither admits nor denies these allegations, but asserts they are irrelevant.

Mr. Kingori was unhappy with his lack of promotion and "stopped doing his work and developed a poor attitude." He "dragged his feet on projects" and treated his supervisors rudely. In his 2013 annual performance review, Mr. Musinipally evaluated him as a two out of five. Mr. Kingori was unprofessional and refused to perform his job duties. Citizens placed him on a final written warning in April 2014.

After the final warning, Mr. Kingori reached out to another Citizens employee, Soner Tunay, the head of Citizens' modeling department, and asked for a chance to work with him on modeling. He was given that opportunity, but Mr. Tunay complained to Mr. Musinipally that Mr. Kingori had no idea what he was doing. As a result, Citizens fired Mr. Kingori sixteen months after it hired him.

### *Mr. Kingori's Account*

Mr. Kingori was a good employee. At his mid-year evaluation, Mr. Musinipally, his direct supervisor, rated Mr. Kingori's performance as excellent. When Citizens cancelled the Basel project, it left Mr. Kingori with no specific job duties. Mr. Musinipally instructed Mr. Kingori to review two older papers from the closed project and to start summarizing the new Basel program materials. Mr. Musinipally claimed that Mr. Kingori did not complete his projects, and therefore he gave him a two out of five year-end review rating. Mr. Kingori challenges this assertion and says the projects were never assigned to him.

Mr. Kingori claims that Mr. Musinipally made racist comments, specifically that he had "a sense of entitlement like most Blacks." Mr. Musinipally also talked a lot about his own privileged upbringing in India and that he approved of the caste

3

system. Mr. Kingori claims that because of Mr. Musinipally's racist comments, the two men did not speak for three weeks. Citizens fired Mr. Kingori for not correcting deficiencies in his work performance.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs the summary judgment process. A party is entitled to summary judgment only if both conditions specified in Rule 56 are met: that "no genuine dispute [exists] as to any material fact" and that the undisputed facts show that the party is "entitled to judgment as a matter of law." *See Knight v. Mills*, 836 F.2d 659, 664 (1st Cir. 1987) (undisputed material facts, together with inferences drawn against the movant, "must lead to one reasonable conclusion in favor of the movant" to justify summary judgment). A material fact is one that "might affect the outcome of the suit under the governing law. * * * Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment deprives the parties of the opportunity to have a jury decide the outcome. But it serves the important purpose of weeding out those cases that do not warrant a trial because there are no facts in dispute to be decided by a jury: "[The summary judgment] rule acts as a firewall to contain the blaze of cases that are so lacking in either factual foundation or legal merit that trial would be a useless exercise." *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 18 (1st Cir. 1999). "[T]he 'salutary purposes of summary judgment–avoiding protracted, expensive and harassing trials–apply no less to discrimination cases' than to other types of cases."

4

*Feinson v. New Sch. for Soc. Research*, 95 Civ. 763 (MBM) (THK), 1997 WL 742532, at *8 (S.D.N.Y. Dec. 1, 1997). Thus, the law requires that all reasonable inferences be drawn against the moving party and that summary judgment be granted if the undisputed facts and inferences that flow from them allow of only one reasonable conclusion in favor of the movant. *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Section 1981 affords "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. A claim of disparate treatment is a claim of intentional discrimination, although direct proof of an intent to discriminate is elusive so a plaintiff often uses circumstantial evidence to make his case. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003). Without any direct proof of discrimination, as there is not here, "the *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)][5] analysis [requires] a plaintiff [to] establish a prima facie case, which in turn gives rise to an inference of discrimination."[6] *Id.*

To state a prima facie case for discrimination under 42 U.S.C. § 1981, the plaintiff must show: "(1) [he is] a member of a protected class; (2) [he is] qualified for

---

[5] It is unclear whether *McDonnell Douglas* has a role to play in analyzing evidence in § 1981 claims, but the United States Supreme Court appears to sanction its use as "a tool for assessing claims, typically at the summary judgment stage." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

[6] Once the plaintiff proves a prima facie case, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its decision. When that happens, the plaintiff then must show that the employer's stated reason is a pretext for discrimination. The Court need not go into these steps because it finds that Mr. Kingori has not made out a prima facie case.

[his] job; (3) [he] suffer[ed] an adverse employment action at the hands of [his] employer; and (4) [there is] some evidence of a causal connection between [his] membership in a protected class and the adverse employment action." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 313 (1st Cir. 2016) (alterations in original) (quoting *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011)).  Because causation is always a hotly contested issue in employment discrimination cases, the Court will start its analysis there, presuming that Mr. Kingori meets the other prima facie elements.

A recent United States Supreme Court decision clarified the causation requirement in § 1981 cases.  *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020).  "To prevail, a plaintiff must initially plead and ultimately prove that, *but for race*, it would not have suffered the loss of a legally protected right."  *Id.* at 1019 (emphasis added).  Therefore, Mr. Kingori, must prove that but for his race, Citizens would not have fired him.[7]  To support his claim, Mr. Kingori submits his own testimony recounting how his supervisor, Mr. Musinipally made racist comments that Mr. Kingori had "a sense of entitlement like most Blacks" and talked "a lot about his own privileged upbringing in India and his approval of the cast[e] system there."

---

[7] The "but for" causation standard is distinguished from the lesser causation standard in Title VII cases in which a plaintiff, seeking declaratory or injunctive relief, merely has to prove that race was *a motivating factor* in the decision.  *Comcast*, 140 S. Ct. at 1017.

But this testimonial evidence, even when viewed in Mr. Kingori's favor, does not support a finding that race was the "but for" cause of his termination. Mr. Musinipally both hired and fired Mr. Kingori. The resume he used to get the job had incorrect information, misleading Mr. Musinipally about his qualifications. And Mr. Musinipally documented his dissatisfaction with Mr. Kingori's work product toward the end of his tenure at Citizens, but he was not the only fellow employee who found Mr. Kingori's work to be substandard. The record shows that Mr. Tunay, the head of Citizens' modeling department, assessed Mr. Kingori's skills and decided that he was unable to perform basic modeling tasks contrary to his own representations. This evaluation led to his termination. Mr. Kingori may disagree with Mr. Tunay's opinion, but he did not supply any evidence to refute Mr. Tunay's conclusions and does not allege that Mr. Tunay made any racist comments or expressed racial animus toward him. While the comments Mr. Kingori alleges Mr. Musinipally made about him are deplorable, there is no evidence on which a reasonable jury could connect them in any way to his decision to fire Mr. Kingori.

## IV.   CONCLUSION

Because there are no material issues of disputed fact, Citizens is entitled to judgment as a material of law. The Court GRANTS Citizens' Motion for Summary Judgment. ECF No. 39.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*
_____
John J. McConnell, Jr.
United States District Chief Judge

September 14, 2020